W. G. Duncan, Transferee of San Antonio Driverless Co., Inc. v. Commissioner. W. G. Duncan v. Commissioner. Esther S. Duncan v. Commissioner.
W. G. Duncan v. Commissioner
Docket Nos. 9916, 9921, 9922.
United States Tax Court
1947 Tax Ct. Memo LEXIS 9; 6 T.C.M. (CCH) 1292; T.C.M. (RIA) 48003A; December 23, 1947
*9 Muckleroy McDonald, Esq., for the petitioners. James L. Backstrom, Esq., and John P. Higgins, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: The Commissioner determined a deficiency of $368.39 in the income and victory tax of each of the petitioners, W. G. and Esther S. Duncan, for 1943, by adjustments to community income, and determined against W. G. Duncan as transferee of the San Antonio Driverless Co., Inc., liability for a deficiency of $1,018.80 in the transferor's declared value excess profits tax and for a deficiency of $7,758.26 and an overassessment of $7,951.09 in its excess profits tax, all for 1943. Petitioners charge the Commissioner with error in imputing all profits from a driverless automobile business to the corporation, contending that the corporation merely rented cars to a partnership composed of petitioner Duncan and an associate and later to Duncan alone and is, hence, taxable only on rentals. By affirmative pleas the Commissioner prays that if the corporation's income be held to consist only of rentals, the community income of W. G. and Esther S. Duncan be increased by the profits of the business *10 in excess of such rentals. Findings of Fact W. G. Duncan and Esther S. Duncan, petitioners in Docket Nos. 9921 and 9922, respectively, are husband and wife, and reside at San Antonio, Texas. They filed separate income tax returns for 1943 with the collector of internal revenue for the first district of Texas. W. G. Duncan, as transferee of the San Antonio Driverless Co., Inc., is petitioner in Docket No. 9916. The San Antonio Driverless Co., now dissolved, had its principal office at San Antonio, Texas, and filed its income tax, excess profits tax and declared value excess profits tax returns for 1943 with the collector of internal revenue for the first district of Texas. W. G. Duncan (hereafter called petitioner) was engaged in the operation of taxi cabs in San Antonio. In September 1940 he became associated with Frank Manley in a business known as the Texas Driverless Company, a publicly registered name owned by them. Manley furnished five automobiles and petitioner furnished thirty-five, which he purchased without cash by giving his notes for the price and making payment from earnings of the business. The automobiles were rented for periods of not less than an hour to customers *11 who were usually required to make a cash deposit and sign a printed contract form. Because many lawsuits were pending against him, petitioner feared that the automobiles would be seized for the satisfaction of judgments, and on advice of counsel petitioner's wife, Manley and another organized the San Antonio, Driverless Company, Inc., (hereinafter called the corporation) as a Texas corporation on December 14, 1940, and title to the automobiles, subject to the contracts of purchase, were transferred to it without cash consideration. The recited purpose of the corporation was "to conduct a livery and transfer business with auto and horse drawn vehicles, and for the sale of such vehicles." Of its authorized capital stock of $500, 48 per cent was reported on its 1941 income tax return as owned by petitioner, 48 per cent by Manley, and 2 per cent by another. On its 1943 return petitioner, president, and Manley, Vice-President, were each declared to hold 2 per cent of its stock. Under date of January 2, 1941 the corporation made a formal contract for lease of its automobiles to the Texas Driverless Company, described therein as "owned and operated by Frank Manley." The lessee agreed to *12 pay $2 a day for the use of each car; to keep the vehicles in good repair, and to make replacements when necessary. It was recited that "the motor vehicles herein leased were purchased by Lessor from various automobile dealers," and it was agreed that the lease contract was subject to the terms of "the conditional sale contracts or mortgages." After the corporation was organized, the business was operated in the same manner as before; the same pads of printed contract forms, bearing the name of the Texas Driverless Company, were used by customers, that name remained listed in the telephone directory and on the neon sign displayed on the leased building which served as business quarters. Bills for goods and services were rendered as before to the Texas Driverless Company, and the name "Texas Driverless Company" was publicly recorded as owned by the corporation. The only bank account maintained was carried in the name of the corporation; all receipts from operation of the business were deposited in that account, and all bills of the business were paid by checks drawn against it. Before and after organization of the corporation, records of the business were loosely kept in a loose-leaf *13 book showing cash receipts and disbursements, and in a ledger, which fails to indicate the source of postings to it and does not balance. No attempt was ever made to segregate income and disbursements between a corporation, partnership or individual. No entries ever indicated the payment or receipt of the automobile rental fixed by the contract, or transfer of the automobile titles. On March 1, 1943, petitioner purchased Manley's "half interest in the Texas Driverless Company and the San Antonio Driverless Company" for $10,000 paid by petitioner. On or about December 31, 1943, the corporation transferred all of its assets, subject to certain of its liabilities, to petitioner, then sole owner of its capital stock. The net value of these assets was not less than $16,728.15; the corporation has since had no assets. It was dissolved on January 3, 1944. The corporation filed income tax returns for 1941, 1942 and 1943. A partnership return was filed by the Texas Driverless Company for 1942, but none was filed for 1941 or 1943. On the corporation's return for 1941 income and deductions for the business as a whole were reported. On the corporation's return for 1942 "car rentals" of $18,044 *14 and a loss of $4,839 from the sale of cars were reported, leaving a gross income of $13,205, and from this figure $13,205 was deducted as depreciation on cars. On the partnership return for 1942 car rental of $18,044 was deducted as an expense. In January 1944 a revenue agent examined such books as were maintained for the business, and on the basis of his report, in which all income from the driverless car business was imputed to the corporation for 1941 and 1942, the corporation included all such income in its 1943 return. The income consisted of gross receipts of $98,091.63, from which $77,440.42 was deducted, leaving a net income of $20,651.21. Among the deductions claimed were salaries of $11,000 to petitioner and of $7,118.62 to Manley, and a "Loss on Stock Purchase" of $9,990. By disallowance of the loss on stock purchase and of $6,000 of Manley's salary and other adjustments, the Commissioner determined a net income of $28,369.38 for declared value excess profits tax and of $28,427.17 for excess profits tax. He determined an overassessment of $270.57 in income tax. He further determined W. G. Duncan liable as transferee for the corporation's unpaid taxes. Opinion Without *15 assigning specific errors in computation, petitioner complains that the deficiencies determined are "based upon the principal error of assumption by the Commissioner that the operations of a partnership, a corporation, and an individual were in fact operations of a corporation only", and that the Commissioner erred by including in the corporation's income "the income of the Texas Driverless Company", which was a partnership until March 1, 1943, and individually owned by petitioner thereafter. The parties agree that total income from operation and the expenses of the business as a whole were correctly determined in amount, leaving for decision whether the corporation is taxable on the whole, as respondent determined, or only on an amount equal to the excess of deductions over $21,800, a figure which petitioner's accountant computed without aid of book entries, as representing total car rentals at $2 per day. It is petitioner's view that he and Manley operated the driverless car business as partners until he bought Manley's interest on March 1, 1943, and that he operated the business as an individual thereafter; that the corporation owned and leased the automobiles to the partnership *16 and thereafter to him at $2 a day each; that the corporation's gross income consists only of these rentals while the partnership and later he, individually, received the profits from the renting of cars to the public. The evidence adduced indicates that petitioner observed few formalities in his business operations. No partnership agreement was shown; no final accounting upon the alleged dissolution, and no book entries from which a partnership may be inferred. The "ledger" maintained did not balance; contained no reference to source of entries, and was incomplete. To compute income an accountant employed by petitioner had to use sheets disclosing cash receipts and disbursements, cancelled checks, bank statements and invoices. There were no entries or other evidence that the contractual rental of $2 a day for a car was ever paid by petitioner or a partnership to the corporation, and such entries as refer to the incorporation and subsequent purchase of Manley's interest were described by petitioner's accountant as "meaningless figures." On this background it can not be found that the records kept were intended as those of individuals, a partnership or the corporation. But even if *17 such a finding could be made, it would contribute little to a disposition of the issue. The Commissioner determined that for 1943 the business was that of the corporation and that the entire profits were taxable to it. Regardless of records, this determination conforms to reality, and petitioner's evidence tends to support rather than rebut it. The corporation had title to the automobiles used; payment for them was made by it from earnings of the business; all cash receipts from the business were deposited in the corporation's bank account and all bills were paid from that account. The alleged partnership had no bank account, as petitioner explained: "* * * because they can attach your bank account and any property you have if they'd sustain a judgment, * * *" From this statement it follows that not only the automobiles but also the income of the business was intentionally kept in the corporation's name to prevent possible attachments. Such an arrangement was not lacking in substance and hence it could not be held that theretically the corporation merely rented cars pursuant to the contract even if the records kept indicated a meticulous book observance of the contract provisions. *18 Since they did not, this is a fortiori true. As no effect was given to the rental contract by the parties, it is entitled to no effect for tax purposes. The corporation, on the contrary, held title to the cars, paid for them, collected the revenue from the business, and used a part of it in paying expenses of the business. It was operating the business, and this is nonetheless true because in operation it used contract forms of the Texas Driverless Company, an advertising sign bearing that name, and kept a telephone in that name; especially since it was the registered owner of that name. The evidence is clear that the corporation was formed to serve petitioner's purpose of placing cars and business income beyond the reach of possible attachment by litigants or creditors. As provisions of the carrenting contract were wholly ignored, the driverless car business was conducted by the corporation, and the income of that business was received and disbursed by it. Since the corporation was so used, it must be taxed on activities that were real, not theoretical, ; ; *19 , and the Commissioner correctly so determined. Cf. ; . By affirmative pleas respondent prays, in the alternative, that the excess of the business' income above the rentals claimed be added to the community income of petitioner and his wife if this Court should hold that profits of the automobile business were not those of the corporation. Our decision renders unnecessary a consideration of this issue. Decision will be entered for respondent.